## JACKSON v. VICTOR SNYDER & CO.
### (No. 7623.)

(Court of Civil Appeals of Texas. Galveston. Nov. 29, 1918. Rehearing Denied April 6, 1922.)

1. **Appeal and error ⬡870(2)—Order overruling plea of privilege held reviewable on appeal from final judgment.**

Where order overruling a plea of privilege was made before Acts 35th Leg. (1917) c. 176 (Vernon's Ann. Civ. St. Supp. 1918, art. 1903) amending Rev. St. 1911, art. 1903, by providing for appeal from an order overruling a plea of privilege, took effect, defendant was entitled to review of such order on his appeal from the final judgment.

2. **Venue ⬡7—Statute as to venue held inapplicable to actions on implied contracts.**

Cotton factor suing grower for balance due of money advanced, on theory that grower was liable therefor under an implied contract, could not sue in county in which contract was made under Vernon's Sayles' Ann. Civ. St. 1914, art. 1830, subd. 5; such statute being inapplicable to an implied contract.

Appeal from Harris County Court, at Law; W. E. Montieth, Judge.

Suit by Victor Snyder & Co. against S. N. Jackson.  Judgment for plaintiff, and defendant appeals.  Reversed and rendered.

Thos. H. Ball, of Houston, for appellant.

Otto Taub and I. B. Simmons, both of Houston, for appellee.

PLEASANTS, C. J.  This suit was brought by appellee to recover of appellant the sum

of $217.61, alleged to be the balance due of money advanced appellant upon cotton shipped by him to appellee and sold by appellee for his account, after deducting from the money so advanced the proceeds of the sale of the cotton.

Plaintiff's petition alleges, in substance, that, during the time of the transaction giving rise to this suit, plaintiff was a cotton factor engaged as such in Houston, Harris county, Tex.; that on or about December 4, 1916, and at later dates, defendant shipped to plaintiff, at Houston, Harris county, Tex., an aggregate of 70 bales of cotton and drew drafts on plaintiff against said cotton aggregating the sum of $4,850; that said drafts were drawn payable in Houston, Harris county, Tex., and to same were attached the bills of lading for said cotton; that said drafts and bills of lading were sent through banks to Houston, and were presented to plaintiff for payment and were paid by him at Houston, Harris county, Tex.; that the cotton represented by said bills of lading was, upon its arrival, delivered to plaintiff and stored and held by him, to be sold upon the Houston market, when and as he should be instructed by defendant, but with the understanding that should the market price of same at Houston so decline as that said cotton, if sold on said market, would not be sufficient to repay plaintiff his advances, defendant would, upon request by plaintiff, refund sufficient of said advances to make plaintiff safe in further carrying said cotton, and, upon defendant's failure or refusal so to do, plaintiff could and would immediately sell said cotton and apply the proceeds toward the payment of said drafts; that a large quantity of the cotton was of the quality known as "bollies" and inferior in quality and value to what defendant represented to plaintiff same would be; that on or about February 1, 1917, there was a great decline in the cotton market at Houston, Tex., and elsewhere, and plaintiff immediately requested defendant by wire to return a part of the money paid out on said drafts, or send more cotton as margin; that defendant failed to do so, and, after a further decline in said market and further like demand upon defendant and further failure upon his part to meet said demands, plaintiff on February 3, 1917, sold said cotton at the highest price obtainable, which was the highest market price on said date on the market at Houston, and realized therefor the sum of $4,670.47, which he applied as a payment on said drafts, leaving the balance of $217.61 due him, for which this suit was brought.

Plaintiff also alleged that at the time he paid said drafts, and at all other times mentioned in his petition, there was a custom among cotton factors in Houston, who received, stored, and advanced money on cotton to be sold by them on instructions by the owner, to sell said cotton without instructions when as much or more money had been advanced upon said cotton as the same would bring upon said market if sold, unless the owner of said cotton, after demand, would return a sufficient sum to said factor to render him secure upon said market; that said custom was known to both plaintiff and defendant at the time said drafts were drawn and paid and said cotton shipped and received, and was so generally and universally known at the time of the making of said contract as that it became and was a part of same.

Paragraph VI of plaintiff's petition is as follows:

"Plaintiff would show to the court that by reason of the shipment of said cotton to him at Houston, Harris county, Tex., which shipments were evidenced by bills of lading issued to cover said cotton, and by the attaching of drafts against plaintiff in favor of said defendant, to all of said bills of lading, which drafts were payable at Houston, in Harris county, Tex., and by the payment of said drafts by plaintiff at Houston, in Harris county, Tex., defendant promised in writing and became liable and bound to pay plaintiff, by reason of said promises in writing, in Houston, Harris county, Tex., any sums which plaintiff might advance to defendant on said drafts in excess of the amount for which said cotton was sold, which amount, as aforesaid, is the sum of $217.61, and which sum defendant promised and became liable to and bound to pay plaintiff at Houston, in Harris county, Tex., with interest thereon until paid at the rate of 6 per cent. per annum."

This petition was filed in the county court at law of Harris county on March 31, 1917.

On May 7, 1917, the defendant filed a plea of privilege to be sued in Crosby county, the county of his residence.

On June 19, 1917, the court heard the plea of privilege and overruled it, to which ruling the appellant duly excepted and preserved exceptions by a proper bill of exceptions.

The cause was tried on its merits on July 13, 1917, and judgment was rendered in favor of plaintiff, from which judgment the defendant prosecutes this appeal.

No question is raised as to the sufficiency of the plea of privilege as a pleading, and no exceptions were presented thereto in the court below. The only question as to the ruling on the plea is whether the evidence adduced on the hearing of the plea shows that appellee's cause of action is based upon a written contract executed by appellant and expressly, or by necessary implication, performable in Harris county.

The facts, as shown by the bill of exceptions, are as follows:

"It was agreed that defendant was a resident citizen of Crosby county, Tex., and that unless

the evidence offered by plaintiff constituted a contract to be performed in Harris county, Tex., that no exceptions to the venue statutes existed in this cause."

The negotiations between the parties began with a letter from plaintiff to defendant, of date October 25, 1916, soliciting shipments of cotton and representing plaintiff's ability and facilities for handling cotton and willingness to advance $75 per bale on middling cotton weighing 500 pounds per bale, and unwillingness to advance that much against cotton known as half and half. This letter predicated 25-cent cotton and impressed upon defendant that it would be to his advantage to ship his cotton to plaintiff to be held where advantage could be taken of the market conditions. In response to this letter, defendant, on November 29, 1916, shipped 45 bales of cotton from Crosbyton, Tex., to Houston, Tex., and drew upon plaintiff for $2,000, attaching the bill of lading for the cotton to the draft. This draft was paid by plaintiff, and the bill of lading and 45 bales of cotton were delivered to plaintiff. On December 27, 1916, defendant drew a draft on plaintiff for $900 "on 45 bales of cotton stored," and on the same day shipped plaintiff 25 bales of cotton and drew a draft on plaintiff for $1,250, attaching thereto the bill of lading for the 25 bales of cotton. Both of these drafts were paid by plaintiff and the bill of lading and the cotton received. On December 30, 1916, defendant drew on plaintiff for $700, which draft was also paid by plaintiff. On January 5, 1917, plaintiff wrote to defendant advising him of the presentation of draft for $700 and its having been promptly taken care of, although no notice of the draft had been received. In this letter plaintiff called defendant's attention to the fact that he had advanced $4,850 against 70 bales, or about $70 per bale, not including freight and charges, and that on the present market $70 per bale was the most liberal advance he was making against straight cotton averaging middling and 500 pounds, and that the 45 bales already received had some spotted bales and a few bollies, and expressed the hope that the shipment of 25 bales, made a few days before, was all straight cotton; and, if all or a part thereof was bollie cotton, plaintiff would be pleased to have defendant return a little margin, or ship cotton to apply as margin.

On February 1, 1917, the cotton market declined 200 points, and plaintiff sent three telegrams to defendant advising him of the condition of the market and demanding that he put up a margin to protect plaintiff against loss on the advances made on the cotton. Defendant failed to put up the margin, and on February 3, 1917, plaintiff sold the cotton; the amount realized from said sale being $217.61 less than the amount theretofore advanced to defendant.

All of the drafts above mentioned were presented to plaintiff by the collecting bank at Houston, Harris county, Tex., and were there paid by him.

"It was agreed that the two bills of lading covering the cotton mentioned in the suit were in regular form showing that said cotton was shipped by defendant from Crosbyton, Tex., to plaintiff at Houston, Tex., and that said bills of lading were received by plaintiff and the cotton delivered to him."

Before considering the question of the correctness of the trial court's holding that appellant's plea of privilege should be overruled, we will pass upon appellee's contention that this court is without jurisdiction to hear and determine this question, because of appellant's failure to appeal from the order overruling the plea.

[1] The act of April 2, 1917, amending article 1903 of Revised Statutes, 1911, and giving the right of appeal from an order overruling a plea of privilege, did not take effect until June 20, 1917, 90 days after the adjournment of the Legislature. Acts 35th Legislature, p. 388 (Vernon's Ann. Civ. St. Supp. 1918, art. 1903). Appellant having no right of appeal from the order at the time it was made preserved his exceptions to such interlocutory order by a proper bill and is entitled to have the order reviewed on his appeal from the final judgment. In the case of Water & Light Co. v. El Campo Light, Ice & Water Co. (Tex. Civ. App.) 150 S. W. 259, cited by appellee's counsel in support of his contention, the defendant's plea of privilege was sustained and the case ordered transferred by the court in which the suit was brought to the proper court in the county of defendant's residence. At the time such order was made, the plaintiff in that suit had the right of appeal therefrom. In discussing the question as presented in that case, this court said:

"The appellant having failed to appeal from the order and judgment of the district court of Bexar county, has it the right to question the action of that court in sustaining the pleas on this appeal, which is prosecuted from a final judgment on the merits rendered in the district court of the county to which the case was transferred? We think not. The statute gave it the right to appeal from that order; and when it failed to avail itself of that right it closed the door to any relief from the erroneous order and judgment of the Bexar county district court removing the case, if, in fact, its order was erroneous. Appellant, after failing to appeal when it might have done so, could not take chances on a favorable judgment in the court to which the case had been removed, and then, when the judgment goes against it, complain that it should be reversed simply that plaintiff might have the right to another trial on the merits in Bexar county. The assignment is overruled."

It may be that, if appellant in this case had had the right of appeal from the order overruling his plea at the time such order was made, the holding in the cited case would be applicable, though the reason for such holding is much stronger when the plea is sustained than when it is overruled.

. If the plea is sustained, the statute requires that the case be transferred to the proper court of the county of defendant's residence, but provides that, if an appeal is taken from such order, "such appeal shall suspend the transfer of the venue and a trial of the cause pending the final determination of the appeal."

The omission from the statute of any provision suspending the trial of the case pending an appeal from an order overruling a plea' of privilege indicates that it was not the intention of the Legislature, in giving the right of appeal from such an order, to require or permit the defendant to appeal from the order before a final judgment is rendered in the case.

It is unnecessary, however, for us to decide this question, because, as before shown, the appellant had no right to appeal directly from the order overruling his plea at the time such order was made.

[2] Upon the merits of the plea we agree with counsel for appellant that the judgment of the trial court denying appellant the privilege of being sued in the county of his residence is without any evidence to support it. It was agreed that appellant is a resident of Crosby county, and, unless the facts show the existence of one of the exceptions named in the statute, the suit could not, over his objection, be maintained against him in any other county. The only exception to the general rule of venue fixed by the statute claimed by appellee in this case is found in section 5 of the venue act, which provides that—

"Where a person has contracted in writing to perform an obligation in a particular county, in which case suit may be brought either in such county, or where the defendant has his domicile." Article 1830, Vernon's Sayles' Texas Civil Statutes.

Appellee's suit is to recover money advanced by him to appellant upon cotton consigned to him by appellant for sale for appellant's account. No express contract for the repayment of the money sued for is shown by the evidence, and the cause of action is based upon an implied contract. We cannot understand by what process of reasoning such implied contract can be held to meet the requirement of the statute above quoted. The petition alleges that the bills of lading under which the cotton was shipped from Crosby county to Harris county and drafts drawn by appellant on appellee for the money agreed to be advanced him by appellee, which drafts were payable at and paid by appellee in Harris county, constituted a promise in writing by appellant to pay appellee in Houston, Harris county, "any sums which plaintiff might advance·to defendant on said drafts in excess of the amount for which said cotton was sold." The bills of lading are not brought up with the record, but from the agreed statement of their contents, before set out, they contain no promise of any kind as to the repayment of any money advanced by appellee on the cotton. The drafts, which are set out in full in the bill of exceptions, contain no such promise or agreement. As before stated, the right of recovery shown in appellee' by the evidence is wholly based upon the implied contract of appellant to repay the money loaned or advanced him by appellee on the cotton. That a cause of action arising upon such a contract is not within the purview of the statutory exception to the general rule of venue is so manifest that the citation of authorities would seem unnecessary. We cite, however, Mahon v. Cotton, 13 Tex. Civ. App. 239, 35 S. W. 869, and Burkitt & Barnes v. Berry (Tex. Civ. App.) 143 S. W. 1187. This holding is not in conflict with the ruling in the case of Selcy v. Williams, 20 Tex. Civ. App. 405, 50 S. W. 399, and Callender v. Short, 34 Tex. Civ. App. 364, 78 S. W. 366. In each of those cases the suit was for recovery of damages for the failure of the seller to deliver goods of the class and value called for by the bill of lading and the ' draft attached thereto; the ' contracts for the delivery of the goods evidenced by the bill of lading and drafts being necessarily performable in the county of the buyer's residence where the suit was brought. The distinction between those cases and the present case is, we think, apparent.

The question presented by this case was fully discussed by us in the recent case of Valdespino v. Dorrance & Co., 207 S. W. 649, not yet [officially] reported. It would serve no useful purpose to repeat what was said in the opinion in the Valdespino Case or to further discuss the question.

It follows from the conclusions before stated that the judgment of the court below should be reversed, and judgment here rendered directing the transfer of this suit to the county court of Crosby county, and it has been so ordered.

Reversed and rendered.